Ingersoll v. Kirby.

Walker.
1w 65
89 520

1w 65
92 148

JUSTUS INGERSOLL v. ZEBULON KIRBY et al.

A complainant cannot demand several distinct things having no connection with each other, of several defendants, by the same bill.

When the matter in litigation is *entire in itself*, it is not necessary that each defendant should have an interest in the suit co-extensive with the claim set up by the bill; he may have an interest in a part of the matter in litigation, instead of the whole.

THIS was a hearing on demurrer.

The bill states that complainant, in 1830, resided at Medina, in the State of New York, at which place he was extensively engaged in business as a tanner and currier, and dealer in leather, and that, at the solicitation of Zebulon Kirby, one of the defendants, he furnished him with

a stock of leather, worth from one thousand to fifteen hundred dollars, and two hundred dollars in money, to go to Detroit and open a store in the leather business for the complainant; that Zebulon went to Detroit, and opened the store in the summer of that year, and continued in charge of it as the agent of the complainant until September, 1831, during which time the complainant sent to him leather, and other articles to a large amount; that, in 1831, the complainant entered into copartnership with Rufus Ingersoll and John Bagley, who also resided at Medina, under the name and firm of Justus Ingersoll & Co.; that, by the copartnership agreement, the store at Detroit became the property of the firm, who continued the business under the charge of Zebulon, as their agent, and supplied the store from time to time with leather and other articles from Medina, until November, 1833, when Rufus Ingersoll and John Bagley sold out their interest in the Detroit store to the complainant; that at the same time, or soon after, a new copartnership in the business at Detroit was formed between the complainant and Zebulon, under the name of Ingersoll & Kirby, that the complainant was to be credited on the books of the new firm, as capital put in by him, with the whole amount of goods, property, debts and moneys, belonging to the concern at Detroit, and Zebulon with about $900, which was due to him for his services as agent of the firm of Justus Ingersoll & Co.; that Zebulon was to devote his whole time and attention to the business of the firm, that for all stock and materials the complainant should afterwards furnish, he was to receive credit on the copartnership books, as so much additional stock put in by him; and that complainant continued to reside at Medina, and to carry on his business there, until the month of September 1838, when he removed with his family to Detroit, and,

on the 28th day of August 1839, dissolved the copartnership of Ingersoll & Kirby.

The bill further states, that when the complainant purchased the interest of his copartners in the Detroit store, Zebulon was requested to make out, and forward to Medina, a true and faithful inventory of the property, debts, &c., belonging to that branch of the copartnership business of Justus Ingersoll & Co. ; that he agreed to do so, but never did ; that the complainant should have been credited, on the books of Ingersoll & Kirby, with at least $26,841 52, as the amount of stock, debts, &c., belonging to the Detroit store, when the copartnership of Ingersoll & Kirby was formed, and that Zebulon had neglected to pass the same to the credit of the complainant. The bill also charges Zebulon with defrauding the complainant, and states that he did not keep correct accounts, that he neglected to keep a cash book, that he deposited the copartnership moneys in the bank in his own name, instead of the partnership name, and that he had used the money of the firm to pay his own individual debts, and the like. Among other charges of this description, the bill states he had invested certain sums of money belonging to the firm in real estate, which he claimed to hold as his individual property ; and that, in the summer of 1838, George Kirby, the other defendant, who is a brother of Zebulon, came to Detroit from the State of New York on the invitation of Zebulon, for the purpose of getting up an establishment in the same line of business, the better to conceal the frauds Zebulon was practising on complainant; that George opened a store in Detroit, and commenced dealing as a leather merchant, on a stock of goods furnished him by Zebulon, in part from the store of Ingersoll & Kirby, and in part purchased with money belonging to the firm ; that Zebulon, at different times, caused large quantities of

leather to be removed from the store of the firm to George's store, without consulting complainant, and without his knowledge, and that such leather was received by George, and sold out of his store ; that whatever goods have been received and sold by George, at his store in Detroit, were wholly or chiefly purchased with the money of the firm of Ingersoll & Kirby, which had been received by Zebulon in the course of their business, and never accounted for to complainant, that Zebulon was the real owner of the stock in George's store, or of the greater part of it, and that George had full notice and knowledge of all the facts, and was himself a party to the fraudulent intentions and conduct of Zebulon, so far as related to the use of the property and funds of Ingersoll & Kirby in his establishment ; and that the conducting of the business in George's name was intended as a mere cover to defraud complainant.

The bill concluded with a prayer that an account might be taken of all and singular the dealings and transactions aforesaid, between the complainant and defendants respectively, from the commencement thereof, and also an account of all moneys received by said Zebulon, both while such agent and partner, &c.

George Kirby demurred for want of equity, and also for multifariousness, and put in an answer denying "all combination and confederacy charged in the bill."

*A. D. Fraser,* for complainant.

*D. Goodwin,* for defendants.

THE CHANCELLOR. The answer of the defendant denies nothing except the general charge of combination and confederacy. The other parts of the bill, therefore, must be taken to be true. The answer does not deny that

George Kirby was furnished, by his brother Zebulon, with a stock of goods to commence business on in Detroit, and that the goods were, in part, taken from the store of Ingersoll and Kirby, and in part purchased with the money of the firm; or that Zebulon, at different times, caused large quantities of leather to be taken from the partnership store to George's store, to be sold, or that these things were done without the knowledge or consent of complainant, and for the purpose of defrauding him. Nor does it deny that Zebulon is the real owner of the goods in George's store. These allegations of the bill, and others, such as George's knowledge of the nature of the several transactions, and that the store was carried on in his name as a cover to the frauds of his brother, in which George participated, are all admitted by the demurrer. A stronger case of fraud could not well be made out.

The other ground of the demurrer is, that the bill is multifarious. A complainant cannot demand several distinct things, having no connection with each other, of several defendants, by the same bill. But, when the matter in litigation is entire in itself, and does not consist of separate things having no connection with one another, it is not necessary that each defendant should have an interest in the suit co-extensive with the claim set up by the bill; he may have an interest in a part of the matter in litigation, instead of the whole. *Fellows* v. *Fellows,* 4 *Cow. R.* 682; *Brinkerhoof* v. *Brown,* 6 *J. C. R.* 139. *The opinion of the Vice Chancellor in Salvidge* v. *Hyde,* 5 *Madd. R.* 138.

The object of the bill is a discovery of the copartnership effects of Ingersoll and Kirby, and an account and settlement of the copartnership business between the partners. This is one entire matter, and George Kirby is made a party on the ground of fraud. He is charged with aiding and assisting Zebulon to defraud the complain-

ant, and, for that end, with having received and sold as his own, and with having in his possession, and claiming as his own, but in fact for Zebulon, certain property of the firm of Ingersoll & Kirby. The complainant is entitled to his proportion of this property, as well as the other property of the copartnership; and, charged as George is with fraudulently obtaining it through Zebulon, and holding it for him, the bill is not multifarious because it prays an account of other copartnership property, with which George has had nothing to do, and is in no way connected.

In *Fellows* v. *Fellows*, the appellant, and two others impleaded with him, held separate parts of the property in litigation, under different deeds made to them at different times by John Fellows, who was also a party, to defraud the respondents; and the bill was held to be not multifarious.

The decision of the Vice Chancellor in *Salvidge* v. *Hyde*, was reversed by the Lord Chancellor, who allowed the demurrer for multifariousness. 1 *Jac. R.* 151. *(S. C.* 4 *Eng. Cond. Ch. R.* 68.*)* But that case differs materially from the one now before the Court. The bill did not charge that the conveyance from Culliford, the executor and trustee, to Laying, who demurred, was made to defraud the complainants. The report of the case in *Maddock*, does not show it to have been a case of actual fraud, on the part of Culliford and Laying; and, on the argument before the Lord Chancellor, as appears by the report in 1*st Jacob's R.*, it was contended only, that the defendant Laying had entered into the contract under circumstances amounting, according to the case made by the bill, to a fraud. The Lord Chancellor, in his opinion, says, "If an executor, having a power to sell, agrees to sell to A. B., can a bill be filed against him, and also for a general administration of the estate? He may have made infinitely

Ingersoll *v*. Kirby.

too good a bargain with the trustee to sell, one that the
Court would not allow to stand, but that is no ground for
making him a party to the general administration." Such
language would not have been appropriate, if the case
had been one of actual fraud.

The bill prays an account against Zebulon of all mo-
neys, &c. received by him as agent of the firm of Justus
Ingersoll & Co. This, at first view, would seem to be a
separate and distinct matter from the copartnership busi-
ness of Ingersoll & Kirby, and to have no connection with
it. Such would, undoubtedly, be the case, were it not for
the agreement between complainant and Zebulon, when
they entered into copartnership, that complainant should
be credited with the amount of stock, debts, &c. belong-
ing to the Detroit store, as capital put in the store by him.
It is this agreement that forms the connecting link between
the two. A settlement of the copartnership business can-
not be made between the partners, without ascertaining
the amount of capital put in by each; and, to do this, an
account must be taken of the stock belonging to the De-
troit store, at the time when it was merged in the firm of
Ingersoll & Kirby. The agency and copartnership busi-
ness are so blended together as to make it necessary to
unite them in the bill. Both accounts must be taken, un-
der the peculiar circumstances, to settle the copartnership
business; and, such being the case, the bill on that ac-
count is not multifarious. *Lewis* v. *Edmund*, 6 *Sim. R.*
251; *(S. C. 9 Eng. Cond. Ch. R. 255.)*

Demurrer overruled.